IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| THE NORTH RIVER INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>  vs.<br><br>H.K. CONSTRUCTION CORPORATION,<br><br>    Defendant. | Case No. 19-cv-00199-DKW-KJM<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

The North River Insurance Company (TNRIC) brought this action under the

Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a judicial determination that,

as a matter of law, TNRIC has no duty under certain insurance policies to defend or

indemnify Defendant H.K. Construction Corporation (HK) for claims asserted in a

lawsuit pending in the First Circuit Court, State of Hawaii.  TNRIC has now moved

for summary judgment, Dkt. No. 17, on the grounds that the "Subsidence and Earth

Movement" exclusionary clause in HK's insurance policy precludes coverage for the

claims in the underlying lawsuit against HK because the claims arise from damage

caused when a landslide occurred while HK was engaged in excavation work.

Because the "Subsidence and Earth Movement" exclusion clause in question

unambiguously excludes coverage for earth movement-related damage caused by

natural phenomena, HK's "work or operation[s]," or any combination thereof, and

because the underlying lawsuit is clearly based on claims involving such damages,

TNRIC's motion, Dkt. No. 17, is GRANTED.

## FACTUAL & PROCEDURAL BACKGROUND

TNRIC issued two insurance policies to HK: a Primary Policy and an Excess Policy.  TNRIC issued the Primary Policy, Dkt. No. 18-4, for the period May 1, 2016 to May 1, 2017.  Dkt. No. 22, ¶ 7.  TNRIC issued the Excess Policy, Dkt. No. 18-5, for the period April 14, 2016 to May 1, 2017.  Dkt. No. 22, ¶ 8.

### A.    Relevant Primary Policy Terms

Under the Primary Policy, the relevant coverage provision is contained in Section I.  In relevant part, the first paragraph of Section I states that TNRIC: (1) "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies"; and (2) "will have the right and duty to defend the insured against any 'suit' seeking those damages."  Dkt. No. 18-4 at 56.

Coverage under the Primary Policy is modified by an Endorsement containing a "SUBSIDENCE AND EARTH MOVEMENT AND EARTH PRESSURE EXCLUSION."  Dkt. No. 18-4 at 98.  That exclusion clause states:

> This insurance does not apply to any liability for "Bodily Injury", "Personal and Advertising Injury", or "Property Damage" directly or indirectly arising out of, caused by, resulting from, contributed to, or aggravated by "Subsidence and Earth Movement" or "Earth Pressure." **Such loss or damage is excluded regardless of any other cause or event, including any product, work or operation provided or**

- 2 -

**performed by or on behalf of the insured, that contributes concurrently or in any sequence to the loss or damage.**

It is further agreed that Section I – Coverages Supplementary Payments – Coverages A and B do not apply to any claim or "suit" seeking damages excluded by this endorsement.

"Subsidence and Earth Movement" means: any movement of land, including, but not limited to, subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, mud flow, rising, tilting, bulging, cracking, shrinking or expansion of foundations, walls, roofs, floors, or ceilings, or any other movements of land or earth.

"Earth Pressure" means: pressure exerted by land or earth, whether or not combined with water.

*Id.* (emphasis added) (hereinafter the "Earth Movement Exclusion").

**B.     Relevant Excess Policy Terms**

Under the Excess Policy, the relevant coverage terms are contained in Section

I.  Dkt. No. 18-5 at 12.  Section I provides as follows:

[TNRIC] will pay on [HK's] behalf the ULTIMATE NET LOSS (1) in excess of all UNDERLYING INSURANCE and (2) only after all UNDERLYING INSURANCE has been exhausted by the payment of the limits of such insurance for losses arising out of occurrences insured by all of the policies designated in the Declarations as UNDERLYING INSURANCE. If any UNDERLYING INSURANCE does not pay a loss for reasons other than the exhaustion of an aggregate limit of insurance, then [TNRIC] shall not pay such loss.

. . . .

The Definitions, Terms, Conditions, and Exclusions of the "CONTROLLING UNDERLYING INSURANCE" scheduled in Item 5 of the Declarations, in effect at the inception of this policy, apply to this coverage unless they are inconsistent with the provisions of this policy, or relate to premium, subrogation, or any obligation to defend,

- 3 -

the payment of expenses, limits of insurance, cancellation or any renewal agreement.

Dkt. No. 18-5 at 12.

### C.     The Underlying Lawsuit

On March 1, 2019, Bruce and Yulin Bingle (the "Bingles") sued HK and Edward and Teruko Nitahara for damage caused to the Bingle property (the "Underlying Lawsuit").[1] *See* Dkt. No. 18-3.  In adhering to the "complaint allegation rule" applicable where there is a question whether claims alleged in a separate lawsuit are covered under an insurance policy, *see Burlington Ins. Co. v. Oceanic Design & Constr., Inc.*, 383 F.3d 940, 944 (9th Cir. 2004), the following facts are taken from "within the four corners" of the Bingles' complaint.  *See Hart v. Ticor Title Ins. Co.*, 272 P.3d 1215, 1225 n.19 (Haw. 2012) (quoting *Dairy Road Partners v. Island Ins. Co.*, 992 P.2d 93, 112 (Haw. 2000)).[2]

In March 2017, the Nitaharas hired HK as the contractor for the construction of a new residence and improvements on their property in Kaneohe, Hawaii.  Dkt. No. 18-3, ¶¶ 2, 5.  As part of the project, HK proceeded to excavate near the boundary between the Nitahara property and the Bingle property in order to "cut the existing slope to build a retaining wall."  *Id.* at ¶ 6.  On March 3, 2017, "due to the

---

[1]*Bruce Bingle and Yulin Bingle v. Edward H. Nitahara, et al.*, No. 1CC191000349 (Haw. 1st Cir. Mar. 1, 2019).
[2]The parties agree that Hawaii insurance law governs their dispute.  Dkt. No. 17-3 at 9; Dkt. No. 21 at 4, 6.

excavation work that HK performed," the slope on the Bingle property "failed and substantial amounts of soil eroded away," causing damage to a moss rock wall and drainage easement.  *Id.* at ¶ 7.  At the time, the Bingles were selling their property, which was in escrow.  As a result of the "landslide," however, the buyer declined to purchase the Bingle property.  *Id.* at ¶¶ 8–9.  HK allegedly promised the Bingles that it would restore their property but failed to do so.  *Id.* at ¶¶ 10–11.

The Department of Planning and Permitting for the City and County of Honolulu (DPP) investigated the landslide incident and, on April 5, 2017, DPP issued a Notice of Violation to the Nitaharas and HK for failure to obtain a grading permit.  Dkt. No. 18-3, ¶ 12.  After HK notified TNRIC of the incident, TNRIC hired a civil engineer (Duane Lee, P.E.) to investigate the matter.  *Id.* at ¶ 14.  When Lee recommended a geotechnical evaluation, TNRIC hired Kokua Geotech, LLC (Geotech) to provide that evaluation of the Bingle property.  *Id.* at ¶ 15.  On August 17, 2017, Geotech issued its report, recommending that a soil anchor system and shotcrete facing be installed to remediate and stabilize the slope.  *Id.* at ¶¶ 16–17. The Bingles ultimately engaged HK's civil engineer to serve as engineer of record for the remediation work and hired Prometheus Construction, as the low bid, to do the work.  *Id.* at ¶¶ 18–22.  Prometheus commenced the remediation work in January 2019.  *Id.* at ¶ 23.

In the Underlying Lawsuit, the complaint asserts three claims against the Nitaharas and HK: (1) withdrawal of lateral support from the slope on the Nitahara property; (2) violation of Honolulu Rev. Ord. § 14.14.4A(b) by virtue of failing to obtain a grading permit; and (3) negligence. Dkt. No. 18-3, ¶¶ 25–46. The Bingles seek damages in excess of $433,000. *Id.* at ¶¶ 24, 40.

### D.    Procedural Posture

On August 18, 2017—over 18 months *before* the Underlying Action was filed—TNRIC Claims Specialist Andy Miller informed HK by letter that TNRIC would not provide coverage for HK's claim arising from the landslide incident at the Bingle property. *See* Dkt. No. 24-5 at 1–2, 6. Nevertheless, TNRIC is currently defending HK in the Underlying Lawsuit pursuant to a full reservation of rights under the subject insurance policies issued by TNRIC. Dkt. No. 18-2, ¶ 4.

On April 19, 2019, TNRIC filed this lawsuit against HK under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking (1) a declaration that TNRIC has no duty under the Primary Policy or Excess Policy to "defend or indemnify HK Construction for the claims asserted against it in the Underlying Lawsuit"; and (2) reimbursement of costs and attorneys' fees incurred in bringing this action and in defending HK in the Underlying Lawsuit. Dkt. No. 1 at 10; *see id.* at ¶ 5. TNRIC has now moved for summary judgment on its request for declaratory relief. Dkt. No. 17.

## STANDARD OF REVIEW

Summary judgment under Federal Rule of Civil Procedure 56(a) is generally appropriate when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–50 (1986). Where, as here, the party moving for summary judgment will bear the ultimate burden of proof at trial, that party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and quotation marks omitted). In other words, TNRIC "must establish beyond controversy every essential element of its" declaratory judgment claim. *See S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003); *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1052 (9th Cir. 2017).

In the context of an insurance coverage dispute, the parties' respective burdens of proof as to the insurer's duties to defend and to indemnify are "distinct." *Tri-S Corp. v. W. World Ins. Co.*, 135 P.3d 82, 97 (Haw. 2006) (brackets in original) (quoting *Dairy Road Partners v. Island Ins. Co., Ltd.*, 992 P.2d 93, 107 (Haw. 2000)). "Generally, the insured has the burden to prove that a loss is covered under

the terms of the insurance policy." *Sentinel Ins. Co. v. First Ins. Co.*, 875 P.2d 894, 909 n.13 (Haw. 1994).  But where, as here, the insurer seeks "a declaration that it has no duty to defend . . . [the insurer is] required to prove that it would be *impossible* for the [claimant] to prevail against [the insured] in the underlying lawsuit[] on a claim covered by the policies." *Tri-S Corp.*, 135 P.3d at 97 (alterations in original) (quoting *Dairy Road*, 992 P.2d at 107–08).  That is, "an insurer 'may only disclaim its duty to defend by showing that <u>none</u> of the facts upon which it relies might be resolved differently in the underlying lawsuit.'" *Nautilus Ins. Co. v. Lexington Ins. Co.*, 321 P.3d 634, 639 (Haw. 2014) (quoting *Dairy Road*, 992 P.2d at 117).  "All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured." *Hart v. Ticor Title Ins. Co.*, 272 P.3d 1215, 1225 (Haw. 2012) (citation omitted).

With respect to an insurer's request for a declaration that it has no duty to indemnify the insured, the insurer is "*not* required to disprove any possibility that its insured might be liable for a claim asserted in the underlying lawsuits." *Tri-S Corp.*, 135 P.3d at 97 (quoting *Dairy Road*, 992 P.2d at 108).  Instead, the insurer is "required only to establish the absence of a genuine issue of material fact regarding the question of coverage pursuant to the plain language of the insurance polic[y]..." *Tri-S Corp.*, 135 P.3d at 97 (alterations in original) (quoting *Dairy Road*, 992 P.2d at 108).  Moreover, as relevant here, "whenever the insurer relies on an exclusionary

clause of a policy . . . , it has the burden of proving facts which bring the case within the exclusion," and "any ambiguity in [the] exclusionary clause is construed in favor of the insured and 'strictly construed against the insurer.'"   *C. Brewer & Co. v. Marine Indem. Ins. Co. of Am.*, 347 P.3d 163, 169 (Haw. 2015) (citations omitted).

## DISCUSSION

The controlling question before the Court is whether the Earth Movement Exclusion precludes insurance coverage for the claims asserted against HK in the Underlying Lawsuit.   Dkt. No. 18-4 at 98.   In moving for summary judgment, TNRIC argues it has no duty to defend or indemnify HK in the Underlying Lawsuit because the Earth Movement Exclusion encompasses claims arising from both natural phenomena as well as HK's own operations.   Dkt. No. 17-3 at 1–2, 18; Dkt. No. 24 at 3, 10.   HK concedes that its "work was the sole cause of the loss," but it contends the damage is covered by TNRIC's policy because the exclusion only applies to earth movements caused entirely by natural phenomena, not those caused by human action.[3]   Dkt. No. 21 at 8–10.   For the reasons that follow, the Court

---

[3]HK correctly points out that counsel for TNRIC failed to comply with the requirement under LR 7.8 that counsel must attach a statement to its motion for summary judgment, certifying that counsel discussed the substance of the motion at least seven days before it was filed.   Dkt. 21 at 4–5; LR 7.8.   Indeed, counsel for TNRIC falls on its sword in acknowledging the failure to comply with LR 7.8 because counsel was "unaware of this new rule" that became effective in September 2019.   Dkt. No. 24 at 3; Dkt. No. 24-1, ¶¶ 4–5.   As a result, HK asks the Court to strike TNRIC's motion for summary judgment.   Dkt. 21 at 4–6.   The Court declines to impose such a sanction where the sole issue presented is a pure question of law, HK clearly disagrees with TNRIC's position, the nature of the dispute makes it unlikely that a pre-filing conference could have narrowed the sole issue subject to this motion, and the deadline for dispositive

concludes that the Earth Movement Exclusion unambiguously applies to the claims against HK in the Underlying Lawsuit arising from its excavation work, and, therefore, TNRIC has no duty to defend or indemnify HK.

### A.   Relevant Legal Principles

Under Hawaii insurance law, "[i]t is well settled that the duty to provide coverage [*i.e.*, the duty to indemnify,] and the duty to defend on the part of an insurer are separate and distinct." *Tri-S Corp.*, 135 P.3d at 97 (brackets in original) (quoting *Dairy Road*, 992 P.2d at 107).  As noted, these two duties also give rise to "distinct" burdens of proof for both the insurer and the insured.  *Id.*

An insurer's "duty to defend 'is broader than the duty to pay claims and arises whenever there is a mere *potential* for coverage,'" even if that "possibility may be remote." *Allstate Ins. Co. v. Pruett*, 186 P.3d 609, 623 (Haw. 2008) (emphasis in original) (quoting *Sentinel*, 875 P.2d at 904).  The duty to defend, however, "is limited to situations where the pleadings [in the underlying case] have alleged claims for relief which fall within the terms for coverage of the insurance contract."  *Id.* (quoting *Hawaiian Holiday Macadamia Nut Co., Inc. v. Indus. Indem. Co.*, 872 P.2d 230, 233 (Haw. 1994)).   Under this so-called "complaint allegation rule," *Burlington*, 383 F.3d at 944, the focus of the inquiry is on "the *facts* alleged in the

---

motions has expired.  Dkt. No. 16.  TNRIC counsel is admonished, however, to strictly adhere to LR 7.8 in the future.

underlying complaint," not the label placed on a claim through "artful pleading." *Hart*, 272 P.3d at 1225 n.19 (emphasis in original) (quoting *Dairy Road*, 992 P.2d at 112). "All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured." *Id.* at 1225 (citation omitted). "[W]hen the facts alleged in the underlying complaint unambiguously exclude the possibility of coverage, conclusory assertions contained in the complaint regarding the legal significance of those facts . . . are insufficient to trigger the insurer's duty to defend." *Id.* at 1225 n.19 (quoting *Dairy Road*, 992 P.2d at 112).

Because "[a]n insurer's duty to defend stems from the policy contract . . . , the language of the policy involved determines the scope of that duty." *Hart*, 272 P.3d at 1223; *Brewer*, 347 P.3d at 169 n.12 ("[T]he broader duty to defend rests on the possibility that the insured would be entitled to indemnification under the policy."). Insurance policies are contracts and, as such, they "are subject to the general rules of contract construction." *Guajardo v. AIG Haw. Ins. Co.*, 187 P.3d 580, 587 (Haw. 2008) (quoting *Dairy Road*, 992 P.2d at 106–07). "[T]he construction and legal effect to be given a contract is a question of law" and "whether a contract is ambiguous is likewise a question of law." *Brown v. KFC National Mgmt. Co.*, 921 P.2d 146, 159 (Haw. 1996).

In construing an insurance policy, courts must do so "according to the entirety of its terms and conditions as set forth in the policy," including any "endorsement or

application attached to and made a part of the policy." Haw. Rev. Stat. § 431:10-237. The terms of the policy are "interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended." *Pruett*, 186 P.3d at 617 (citation and internal quotation marks omitted). That is, the insurance policy must be construed in "accord with the reasonable expectations of a layperson." *Hart*, 272 P.3d at 1223 (citation and internal quotation marks omitted); *Del Monte Fresh Produce, Inc. v. Fireman's Fund Ins. Co.*, 183 P.3d 734, 745 (Haw. 2007) (explaining that "[t]hese 'reasonable expectations' are derived from the insurance policy itself"). Moreover, "because insurance policies are contracts of adhesion . . . prepared by the insurer's attorneys, . . . they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer." *Pruett*, 186 P.3d at 617 (citation and internal quotation marks omitted).

"A contract is ambiguous when its terms are reasonably susceptible to more than one meaning." *Hawaiian Ass'n of Seventh-Day Adventists v. Wong*, 305 P.3d 452, 461 (Haw. 2013). The mere fact that the parties offer competing interpretations of contract terms "does not render clear language ambiguous." *State Farm Fire & Cas. Co. v. Pacific Rent-All, Inc.*, 978 P.2d 753, 762 (Haw. 1999) (collecting cases). And by the same token, a term left undefined in the contract—without more—does not constitute an ambiguity. *See, e.g.*, *Hawaii Ass'n of Seventh-Day Adventists*, 305

P.3d at 463–64; *Hart*, 272 P.3d at 1224; *Pruett*, 186 P.3d at 619.  In the end, "[a]

court must respect the plain terms of the policy and not create ambiguity where none

exists."  *Hart*, 272 P.3d at 1223 (citation omitted) (quoting *Smith v. New England

Mut. Life Ins. Co.*, 827 P.2d 635, 638 (Haw. 1992)).

### B.    TNRIC Has No Duty to Defend or Indemnify HK

Because the Earth Movement Exclusion employs broad and unambiguous

terms to exclude coverage for property damage arising from land movement-related

damage caused by natural forces, the "work or operation" of HK, or any combination

thereof, TNRIC has no duty to defend or indemnify HK for the claims asserted in

the Underlying Lawsuit.

The Court looks first "to the language of the insurance policy" to determine

whether coverage exists under TNRIC's policies.  *Nautilus*, 321 P.3d at 645.  As

relevant here, the Earth Movement Exclusion excludes coverage for "'Property

Damage' directly or indirectly arising out of, caused by, resulting from, contributed

to, or aggravated by 'Subsidence and Earth Movement' or 'Earth Pressure' . . .

*regardless of any other cause or event, including any product, work or operation

provided or performed by or on behalf of the insured, that contributes concurrently

or in any sequence to the loss or damage*."  Dkt. No. 18-4 at 98 (emphasis added).

"Subsidence and Earth Movement" and "Earth Pressure" are both broadly defined.[4]

---

[4] "Subsidence and Earth Movement" is defined as "any movement of land, including, but not

The Earth Movement Exclusion is unambiguous.  When the provision is interpreted according to its "plain, ordinary, and accepted sense in common speech," *Pruett*, 186 P.3d at 617,  the provision unambiguously states that if the ground soil "sink[s], slip[s], or "fall[s] away," and "directly or indirectly" results in property damage—even if the event was caused, in whole or in part, by the "work or operation[s]" HK performed at any time—then the property damage is not covered under the policy TNRIC issued to HK.  Put simply, TNRIC's policy does not cover property damage resulting from the movement, "settling, slipping, [or] falling away" of land caused by natural phenomena, HK's operations, or any combination thereof.

Here, the factual allegations in the Underlying Lawsuit fit comfortably within the terms of the Earth Movement Exclusion.  In particular, the complaint filed in the Underlying Lawsuit states that shortly after HK began excavating part of a slope near the boundary line between the Nitahara and Bingle properties, the slope failed and eroded, causing damage to the Bingle property.  Dkt. No. 18-3, ¶¶ 5–7.  These allegations "unambiguously exclude the possibility of coverage" because the damage arises from "Earth Subsidence and Movement" in connection with HK's work.  *See Hart*, 272 P.3d at 1225 & n.19.  This holds true regardless of whether or

---

limited to, subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, mud flow, rising, tilting, bulging, cracking, shrinking or expansion of foundations, walls, roofs, floors, or ceilings, or any other movements of land or earth."  Dkt. No. 18-4 at 98.  "Earth Pressure" is defined as "pressure exerted by land or earth, whether or not combined with water."  *Id.*

not a jury concludes that HK was negligent.  *See Nautilus*, 321 P.3d at 639; *Dairy Road*, 992 P.2d at 117.  As such, TNRIC does not have a duty to defend HK in the Underlying Lawsuit.  *See Hart*, 272 P.3d at 1225 & n.19.  Because "the broader duty to defend rests on the possibility that the insured would be entitled to indemnification under the policy," *Brewer*, 347 P.3d at 169 n.12, it follows that TNRIC also has no duty to indemnify HK for damages alleged in the Underlying Lawsuit.[5]

To reach a contrary result, HK makes two arguments, both of which are unavailing.  First, the cases HK relies upon are inapposite.  Dkt. No. 21 at 8–10.  In each of the cases cited by HK, the court held that the earth movement exclusion in question was ambiguous because it described types of natural earth movements (such as earthquakes, volcanic eruptions, sinkholes, erosion, and landslides) without any mention of human-related "causes" of those events.  *See, e.g.*, *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 8 (W. Va. 1998); *Nautilus Ins. Co. v. Vuk Builders, Inc.*, 406 F. Supp. 2d 899, 904 (N.D. Ill. 2005); *Mattis v. State Farm Fire & Cas. Co.*, 454 N.E.2d 1156, 1160–61 (Ill. App. Ct. 1983); *Ins. Co. of State of Pennsylvania v. ALT Affordable Housing Services, Inc.*, 1999 WL 33290622, *3 n.31 (W.D. Tex. 1999); *Am. Motorists Ins. Co. v. R & S Meats, Inc.*, 526 N.W.2d

---

[5]The Court rejects HK's contention that it would be premature to determine TNRIC's duty to indemnify. Dkt. No. 21 at 12–14. TNRIC has met its burden of establishing "the absence of a genuine issue of material fact regarding the question of coverage pursuant to the plain language of the insurance polic[y] . . ." *Tri-S Corp.*, 135 P.3d at 97 (alterations in original) (quoting *Dairy Road*, 992 P.2d at 108). Therefore, TNRIC is entitled to a declaration now that it has "no duty to indemnify" HK. *Id.*

791, 795–96 (Wis. Ct. App. 1994); *Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 652–53 (Minn. 1986). Therefore, these courts limited the earth movement exclusion in question to claims arising from earth movements caused by natural phenomena but not those movements caused by human action. But none of the cases HK relies upon involved an earth movement exclusion, like the one here, that explicitly excludes earth movement-related damage caused, in whole or in part, by the "*work or operation[s] . . . of the insured.*" Dkt. No. 18-4 at 98. HK does not grapple with this glaring distinction.

To be sure, although Hawaii courts have not construed an earth movement exclusion like the one involved here,[6] "the absence of controlling Hawaii caselaw does not by itself establish sufficient legal uncertainty to trigger coverage" under the subject policies. *Burlington*, 383 F.3d at 953 (citing *Sentinel*, 875 P.2d at 907). Those courts that have construed an earth movement exclusion virtually identical to TNRIC's have held that the provision unambiguously excludes earth movement-related damages caused by natural phenomena *and* the insured's activities. *See, e.g., Fed. Ins. Co. v. Olawuni*, 539 F. Supp. 2d 63, 65–67 (D.D.C. 2008) (excluding damages caused by insured's excavation work); *Essex Ins. Co. v. New Jersey Pan African Chamber of Commerce & Indus., Inc.*, No. A-1178-11T4, 2013 WL

---

[6]Indeed, both parties rely exclusively on extra-jurisdictional caselaw construing earth movement exclusionary provisions. *See* Dkt. No. 17-3 at 12–17; Dkt. No. 21 at 8–10.

4515934, at *2–4 (N.J. Super. Ct. App. Div. Aug. 27, 2013) (same); *Sherwood v. Kelido, Inc.*, No. A-1585-07T3, 2009 WL 1010988, at *1, *5 (N.J. Super. Ct. App. Div. Apr. 15, 2009) (holding that damage caused by insured's negligent backfilling of soil was excluded under the policy); *Shapell Indus., Inc. v. Associated Int'l Ins., Inc.*, No. B152117, 2002 WL 31430620, at *7–9 (Cal. Ct. App. Oct. 31, 2002) (concluding "policy unambiguously excludes loss due to subsidence resulting from human negligence"); *Blackhawk Corp. v. Gotham Ins. Co.*, 63 Cal. Rptr. 2d 413, 415–17 (Cal. Ct. App. 1997) (excluding subsidence damage caused by grading work performed by contractors hired by the insured).  As in these cases, so too here.

Second, HK invokes the doctrine of "estoppel by acquiescence" and argues that TNRIC should be estopped from denying coverage because it assured HK that the incident would be covered and then later changed positions.  *See* Dkt. No. 21 at 14–16; Dkt. No. 22-1, ¶¶ 5–8.  The argument has no footing in the law or facts.  To establish estoppel by acquiescence, a litigant must show that their opponent (1) acquiesced or affirmatively approved a course of conduct; and (2) "possesse[d] full knowledge of all the material particulars and circumstances and was fully apprised of the effect of the acts ratified and of [their] legal rights in the matter."  *See Harrison v. Casa De Emdeko*, 418 P.3d 559, 573–74 (Haw. 2018) (citation and internal quotation marks omitted).

Here, HK maintains it received "assurances" regarding coverage for the claim during "conversations with representatives of TNRIC" that allegedly took place "[s]hortly after the March 3, 2017 incident." Dkt. No. 22-1, ¶ 5. At that time, however, the incident had yet to be investigated. Geotech did not issue its report until August 17, 2017. Dkt. No. 18-3, ¶¶ 16–17. And the next day—over 18 months *before* the Underlying Action was filed—TNRIC issued a letter formally denying HK's claim. Dkt. No. 24-5 at 1–2. As such, HK has not established that, with respect to coverage for the claim, TNRIC "possesse[d] full knowledge of all the material particulars and circumstances" at the time TNRIC representatives allegedly made verbal assurances that the claim would be covered.

To the extent HK also contends equitable estoppel applies, as a general rule, "the doctrine of estoppel may not be used to broaden the coverage of an insurance policy so as to protect the insured against risks not included therein or expressly excluded therefrom." *Enoka v. AIG Hawai'i Ins. Co.*, 128 P.3d 850, 869 (Haw. 2006). The Hawaii Supreme Court has recognized the following three exceptions to this general rule: (1) "the insurer, or its agent, made a misrepresentation at the policy's inception that resulted in the insured being prohibited from procuring the coverage [the insured] desired"; (2) the "insurer has represented the insured without a reservation of rights"; and (3) "the insurer has acted in bad faith." *Id.* at 870–71 (citation omitted).

Here, none of the exceptions apply.  The alleged misrepresentation by TNRIC did not occur at the time HK was seeking to purchase an insurance policy.  In the Underlying Lawsuit, TNRIC has defended HK pursuant to a full reservation of rights under the subject insurance policies.  Dkt. No. 18-2, ¶ 4.  TNRIC then filed this action to determine its obligations.  As such, TNRIC acted in good faith because this is precisely the approach the Hawaii Supreme Court has prescribed for insurers to follow.  *Nautilus*, 321 P.3d at 644; *see also Enoka*, 128 P.3d at 865–66 (finding insurer did not act in bad faith when it denied coverage based on an open question of law).  In fact, an insurer acts in good faith even when it denies coverage based on a "reasonable," albeit "erroneous," interpretation of the policy.  *See Best Place v. Penn Am. Ins. Co.*, 920 P.2d 334, 346–47 (Haw. 1996).  As explained, TNRIC correctly interpreted its policy when it denied coverage.

As important, HK has not shown that it "detrimentally relied on the representation or conduct of [TNRIC], *and* that such reliance was reasonable." *Enoka*, 128 P.3d at 870 (citation and internal quotation marks omitted).  Contrary to HK's averments, Dkt. No. 21 at 16; Dkt. No. 22-1, ¶¶ 6–8, it is irrelevant that TNRIC did not consult HK before hiring a civil engineer or Geotech.  Nor is it relevant that HK did not have the opportunity to approve or weigh in on the remedial recommendations provided by these specialists.  The Primary Policy expressly provides that TNRIC "may, at [its] discretion, investigate any offense and settle any

claim or 'suit' that may result." Dkt. No. 18-4 at 61. Because TNRIC has maintained "there is no coverage under [the] policy" *since it first issued its denial letter*, HK could not have, as a matter of law, reasonably "relied on any of [TNRIC]'s representations to [its] detriment," and, therefore, TNRIC is not estopped from denying coverage. *See Enoka*, 128 P.3d at 870 (quoting *State Farm Mut. Auto. Ins. Co. v. GTE Hawaiian Telephone Co.*, 915 P.2d 1336, 1344 (Haw. 1996)); *Best Place*, 920 P.2d at 354–55.

In sum, although HK assumed that claims of the type alleged in the Underlying Lawsuit would be covered under TNRIC's policies, Dkt. No. 22-1, ¶ 3, "insurers have the same rights as individuals to limit their liability and to impose whatever conditions they please on their obligation, provided they are not in contravention of statutory inhibitions or public policy." *Nautilus*, 321 P.3d at 643 (citation and internal quotation marks omitted). TNRIC's Earth Movement Exclusion in the policy it issued to HK unambiguously precludes coverage for property damage arising from land movement caused by natural phenomena, HK's "work or operation[s]," or any combination thereof. Because this broad exclusion encompasses the basis for the Underlying Lawsuit against HK, TNRIC has no duty to defend or indemnify HK for the claims asserted by the Bingles in the Underlying Lawsuit.

## <u>CONCLUSION</u>

For the reasons set forth herein, TNRIC's motion for summary judgment, Dkt. No. 17, is GRANTED.  The Clerk is instructed to enter judgment in favor of Plaintiff and then close this case.

IT IS SO ORDERED.

DATED: May 22, 2020 at Honolulu, Hawaiʻi.



_____
Derrick K. Watson
United States District Judge

<u>*The North River Insurance Company v. H.K. Construction Corporation*</u>; Civil No. 19-00199-DKW-KJM; **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**